## CHEEK–NEAL COFFEE CO. v. HAL DICK MFG. CO.

Patent Appeal No. 2295.

Court of Customs and Patent Appeals.

April 14, 1930.

Edward S. Rogers and Allen M. Reed, both of Chicago, Ill. (John S. Prescott, of New York City, of counsel), for appellant.

Clarence A. O'Brien, Charles E. A. Smith, and Thomas E. Turpin, all of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents affirming a decision of the Examiner of Interferences dismissing a notice of opposition in a trade-mark proceeding.

· The facts upon which the dismissal is based are stated in the Commissioner's decision as follows:

"The applicant seeks registration of a mark comprising a composite picture including a pictorial representation of a hotel, the words 'Maxwell House' appearing above such representation and a slogan 'Good to the Last Bite' appearing below such representation of a hotel, the whole matter being enclosed within an oblong border, and used upon horseradish, olive spread, cranberry jelly, relish spread composed of a mixture of eggs, oil, vinegar and sweet pickles, sweet relish composed of sweet pickles and curry seed, chili sauce, salad dressing, orange marmalade, mustard, tomato catchup, Thousand Island dressing, peanut butter and mayonnaise.

"The opposer alleges prior adoption, use and ownership of a trade mark including the pictorial representation of this same hotel and the slogan 'Good To The Last Drop,' used upon coffee and tea.

"Opposer sets forth certain prior registrations of its mark in 1915, 1924 and 1926, and alleges wide advertising of goods under its mark, very extensive sales and the possession of a valuable good will.

"A comparison of the two marks shows that the applicant has substantially availed itself of the principal characteristics of the opposer's mark. The representation of the hotel, as adopted by the applicant, includes even the representation of the street car and the horses and vehicles adopted by the opposer. * * * *"

The ground of dismissal of the opposition was that the goods of the parties possess different descriptive properties, and, therefore the opposer, appellant's assignor, having based his notice of opposition wholly upon confusion in trade, did not present a statutory ground of opposition.

The only question necessary for us to determine is whether the goods of the parties are of the same descriptive properties, as that term is used in section 5 of the Act of February 20, 1905, as amended (15 USCA § 85).

The construction of the phrase "same descriptive properties" has frequently been before the courts, and many conflicting decisions can be found upon this point.

This court at the present term, in a number of cases, has had occasion to review this question and the conflicting decisions with respect thereto. In the case of B. F. Goodrich Co. v. Clive E. Hockmeyer (Zip-On Manufacturing Co., substituted), 40 F.(2d) 99, we definitely held, speaking of said section 5, that: " * * * The language "same descriptive properties" contained in the first *proviso* was intended by the Congress to relate to goods of the same general class; that such language was not intended to be more or less comprehensive than the term 'class' used in the first part of the section; that the language of the first *proviso* was intended to state the converse of the mandates of the first part of the section, namely, that a mark by which the goods of the owner of the mark may not be distinguished from other goods of the same class *shall not be registered.* * * * *"

In other words, this court holds that the word "class" and the phrase "same descriptive properties," as used in said section 5, are synonymous in their meaning.

Applying this construction to the case at bar, we have no difficulty in holding that the goods of the parties to which the marks are applied are of the same descriptive properties.

The Century Dictionary defines "class" as follows: "4. a number of objects distinguished by common characters from all others, and regarded as a collective unit or group; a collection capable of a general definition; a kind."

While this definition may not be sufficiently comprehensive, it is a correct statement of the common meaning of the word as ordinarily used.

Do the goods of the parties belong to a collection "capable of a general definition"? We think they do. We may take judicial notice of the fact that the goods of both parties are commonly known as groceries, sold in the same stores and to the same class of purchasers.

The word "groceries" is defined in Funk & Wagnalls New Standard Dictionary as fol-

lows: "Household supplies for the table such as are dealt in by grocers."

The Century Dictionary has the following definition of the word: "3. General supplies for the table and for household use, as flour, sugar, spices, coffee, etc. * * *"

We are clear that coffee and tea, the goods of appellant to which its mark is applied, and horse-radish, olive spread, cranberry jelly, relish spread, composed of a mixture of eggs, oil, vinegar, and sweet pickles, sweet relish, composed of sweet pickles and curry seed, chili sauce, salad dressing, orange marmalade, mustard, tomato catchup, Thousand Island dressing, peanut butter, and mayonnaise, the goods of appellee to which its mark is applied, are of the same class; that they possess the same descriptive properties, as that phrase is construed by this court; and that the Commissioner erred in dismissing the notice of opposition of appellant.

The decision of the Commissioner is reversed, and the case remanded for further proceedings not inconsistent with the views here expressed.

Reversed.