## WILLIAMS OIL–O–MATIC HEATING COR-PORATION v. WESTINGHOUSE ELECTRIC & MFG. CO.*

Patent Appeal No. 3018.

Court of Customs and Patent Appeals.

Dec. 27, 1932.

Langdon Moore, of Washington, D. C. (James Atkins, of Washington, D. C., of counsel), for appellant.

O. H. Eschholz, of East Pittsburgh, Pa. (Birney Hines, of East Pittsburgh, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

*Rehearing denied February 6, 1933.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing the notice of opposition of appellant, and holding that appellee was entitled to the registration of the trade-mark "Adjust-O-Matic," for use on adjustable and thermostatically controlled electric sadirons—flatirons.

In its notice of opposition, as amended, the Williams Oil-O-Matic Heating Corporation alleged ownership and registration of the trade-marks "Oil-O-Matic" and "Dist-O Matic," for use on electrically operated and thermostatically controlled liquid-fuel-burning devices. It averred that the mark of appellee was confusingly similar with each of those of appellant, and that, therefore, appellant would be damaged by the registration of appellee's mark.

In its answer to the notice of opposition, appellee alleged that the goods of the respective parties were not of the same class, and denied that the marks were confusingly similar.

The case was submitted upon an agreed statement of facts. It appears therefrom that appellant used its trade-marks "Oil-O-Matic" and "Dist-O-Matic" on electrically operated liquid-fuel-burning devices, and the trade-mark "Ice-O-Matic" on electrically operated domestic refrigerating units, prior to the adoption and use by appellee of its trade-mark; that appellant's fuel-burning devices and electric refrigerating units are operated by electric motors, adapted to be connected to electric-light circuits, and are thermostatically controlled; that appellant has expended large sums of money in advertising its trade-marks and its goods; and that its goods are sold to the public through licensed dealers, some in hardware stores, electrical shops, department stores, and by utility companies, and some by dealers who deal only in appellant's products.

Appellee's sadirons—flatirons—are used in homes for ironing and pressing textile-fabric articles. They are adapted to be connected to electric-light circuits and are adjustable and thermostatically controlled. They have been extensively advertised, and are sold to the purchasing public through central-station stores, electrical dealers, and department and hardware stores.

Each of the Patent Office tribunals held that the goods of the parties did not possess the same descriptive properties, and that the marks were not confusingly similar.

Counsel for appellant contends, in substance, that, as the goods of the parties are articles of domestic utility and are operated by connecting them to the domestic electric-light circuit, and as the operation of each is controlled by a thermostat which may be adjusted to predetermine the starting and stopping of the involved devices, they are goods of the same class and possess the same descriptive properties. This view is challenged by counsel for appellee.

The language "same descriptive properties," contained in the first *proviso* of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), was intended by the Congress to relate to goods of the same general class, and was used synonymously with the term "class," used in the first part of that section. The words "same class" and "same descriptive properties" should be given "a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers," and, in that connection, "the use, appearance, and structure of the articles, the similarity or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered." B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F. (2d) 99, 103, 17 C. C. P. A. 1068; Decker & Cohn, Inc., v. Liebovitz Sons, Inc., 46 F. (2d) 179, 18 C. C. P. A. 781; California Packing Corp. v. Tillman & Bendel, Inc., 40 F. (2d) 108, 17 C. C. P. A. 1048.

The goods of the parties are household utilities. They are adapted to be connected to the electric-light circuit, and are thermostatically controlled. They are not similar, however, in any other respect. They differ greatly in cost, use, appearance, and structure, and, of course, are not competitive.

Were it not for the fact that they are thermostatically controlled, we dare say that no one would contend that sadirons possess the same descriptive properties as either fuel-burning devices or refrigerators.

In this connection, it may be observed that electric toasters, heating pads, waffle irons, table grills, or sandwich toasters, and possibly other articles of household utility, are electrically operated and thermostatically controlled. Is it possible that those articles and either fuel-burning devices or refrigerators possess the same descriptive properties merely because they are electrically operated and thermostatically controlled? Might it not with equal force be argued that all electrically operated devices belong to the same class for trade-mark purposes?

We are of opinion that the mere attachment of automatic temperature regulators does not so change the character of sadirons as to give them, within the principles heretofore referred to, the same descriptive properties as either electrically operated and thermostatically controlled refrigerators or fuel-burning devices, and that the Commissioner of Patents reached the right conclusion.

The decision is affirmed.

Affirmed.

LENROOT, Associate Judge (dissenting).

I could readily concur in the conclusion reached by the majority in this case were it not for the opinions of this court in the cases of California Packing Corp. v. Tillman & Bendel, 40 F. (2d) 108, 17 C. C. P. A. 1048; B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F. (2d) 99, 17 C. C. P. A. 1068; and Decker & Cohn, Inc., v. Liebovitz Sons, Inc., 46 F. (2d) 179, 18 C. C. P. A. 781, which cases are cited in the majority opinion in the case at bar in support of the language in said opinion reading as follows: "The language 'same descriptive properties,' contained in the first proviso of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), was intended by the Congress to relate to goods of the same general class, and was used synonymously with the term 'class,' used in the first part of that section. The words 'same class' and 'same descriptive properties' should be given 'a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers,' and, in that connection, 'the use, appearance, and structure of the articles, the similarity or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered.'"

In the first two cases cited above, Judge Garrett and I specially concurred in the conclusion, but disagreed with the view of the majority that the words "same class" and "same descriptive properties," as used in section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), should be given a limited or an extended meaning and application, according to whether or not the use of iden-

tical or similar trade-marks would be likely to cause confusion or mistake in the minds of the public, or to deceive purchasers. The minority of the court in the case of California Packing Corp. v. Tillman & Bendel, supra, expressed the view that the confusion contemplated by the statute was the result of a deceptively similar mark being applied to goods of the same descriptive properties, but that actual confusion could not be the test of whether or not goods were of the same descriptive properties. The further view was expressed that if actual confusion was to be a test of whether goods had the same descriptive properties, then the phrase "same descriptive properties" had no meaning in the section.

In the third case above cited, I did not dissent from the views expressed in the opinion as to the construction of the phrase "same descriptive properties," but accepted the same as the settled law declared by this court. As the majority opinion in the case at bar reiterates this construction of the words "same descriptive properties," I accept it as the settled law; accordingly, whether the goods of the parties, to which the marks here involved are applied, are of the same descriptive properties, is dependent upon whether or not confusion is likely to result from the use of the trade-marks in issue upon the respective goods of the parties, under the law as interpreted by this court in the above-cited cases.

Applying this construction to the case at bar, it seems to me that, it being shown that appellee used the trade-marks "Oil-O-Matic" and "Dist-O-Matic" upon electrically operated and thermostatically controlled liquid-fuel-burning devices, and the trade-mark "Ice-O-Matic" upon electrically operated domestic refrigerating units, prior to the adoption and use by appellee of its trade-mark "Adjust-O-Matic" as applied to adjustable and thermostatically controlled electric sadirons, one desiring to purchase a sadiron, being familiar with the trade-marks "Oil-O-Matic" and "Dist-O-Matic" upon electrically operated, thermostatically controlled fuel-burning devices, and the mark "Ice-O-Matic" upon electrically operated refrigerating units, would, upon seeing a sadiron bearing the trade-mark "Adjust-O-Matic," naturally conclude that said sadiron was also manufactured by the same party that manufactured goods under the names "Oil-O-Matic," "Dist-O-Matic," and "Ice-O-Matic."

I would repeat that, were it not for the construction given by this court to the words "same descriptive properties," I would be of the opinion that the goods of the respective parties, upon which the marks are used, are not of the same descriptive properties, and would concur in the conclusion reached by the majority.

However, if the likelihood of confusion is to be the determining factor of whether goods are of the same descriptive properties, as is now the settled law of this court, then it follows, if I am correct in my belief that confusion would likely result from the use of the marks of the parties, that the goods do have the same descriptive properties. It therefore follows that, the goods possessing the same descriptive properties under the law as interpreted by this court, and there being likelihood of confusion as a result of the use of the marks, the opposition of appellant should be sustained.